1  JOHN S. LEONARDO
   United States Attorney
2  District of Arizona
   JONATHAN B. GRANOFF
3  Assistant U.S. Attorney
   United States Courthouse
4  405 W. Congress Street, Suite 4800
   Tucson, Arizona 85701
5  Telephone:  520-620-7300
   Email: jonathan.granoff@usdoj.gov
6  Attorneys for Plaintiff

7              IN THE UNITED STATES DISTRICT COURT

8                FOR THE DISTRICT OF ARIZONA

9
   United States of America,
10                                          CR 11-794-TUC-RCC (CRP)
                    Plaintiff,
11
          vs.                               **UNITED STATES' MOTION *IN LIMINE*
12                                          TO EXCLUDE EVIDENCE OR
   Dino Sisneros                            ARGUMENT REGARDING FAULT OF
13 Melissa Sisneros                         THE LENDERS**
   Michael Quiroz
14 Catherine Tarin,

15                  Defendants.

16

17        Plaintiff, United States of America, by and through its attorneys, John S. Leonardo,

18 United States Attorney for the District of Arizona, and Jonathan B. Granoff, Assistant U.S.

19 Attorney, hereby files this motion *in limine* for an order precluding the defendants from pointing

20 their finger at the mortgage lenders that they are charged with defrauding.  The defendants are

21 charged with a number of crimes, including Conspiracy to Commit Wire Fraud.  The scheme

22 involved multiple properties over a period of years.  The accusations generally allege that the

23 defendants conspired to recruit straw buyers and to submit loan applications to various lenders

24 that contained material false representations or material omissions.

25        At issue in this case is defendants' – not the mortgage lenders' mental state.  The

26 materiality element of wire fraud is an objective one under the law.  Therefore, any claims that a

27 specific lender was negligent in failing to detect the defendants' fraud; would have made the loan

28 despite the defendants' false statements; was complicit in the fraud; or any accusations of

incidents of malfeasance by lending institutions are irrelevant under rule of evidence 401. Moreover, these types of claims should be precluding under rule of evidence 403 because any probative value of these allegations would be substantially outweighed by the danger of unfair prejudice, misleading the jury, and confusion of the issues.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.   Because the standard of materiality is an objective one, the actions of a specific mortgage lender are not relevant.

Because wire fraud has a materiality requirement - the statements made by the defendants must be materially false. 18 U.S.C. §§ 1343, 1344.  In Doc. 443 (Government's Response to Defendant Melissa Sisneros's Motion for Discovery), the government described how the courts apply an objective test to the defendants' false statements.  Doc. 443 at 2.  Specifically, the intent of the person making the statement need only be "capable of influencing" rather than inducing actual reliance.  *See Neder v. United States*, 527 U.S. 1, 24-25 (1999); *United States v. Gaudin*, 515 U.S. 506, 509 (1995); *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008). Whether a defendant's misrepresentations *actually* influenced the decision-maker to whom they were directed has no bearing on the materiality inquiry: "A misrepresentation may be material without inducing any actual reliance.  *What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose.*" *United States v. Blixt*, 548 F.3d 882, 889 (9th Cir. 2008) (*quoting*, *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981)) (emphasis added).

The government further explained in Doc. 443 how under these standards, the circuit courts of appeal have precluded the type of defenses that blame the victim financial institution or victims in fraud cases.  *See* Doc. 443 at 3-4.  Under these same standards, any evidence or argument that a mortgage lender in this case would have funded a loan even if it had known of defendants' false statements is irrelevant as probative of *reliance* rather than materiality. Because the materiality element focuses on the intent of the person who made the false statements - and not the person to whom the false statements were made - the law does not

permit defendants to attempt to shift the jury's focus away from himself or herself and onto the mortgage lenders.  Indeed, the Ninth Circuit has affirmed bank fraud convictions even when representatives of the victim lender actively participated in the fraud.  *See, e.g., United States v. Molinaro*, 11 F.3d 853, 857 (9th Cir. 1993) (because financial institution itself is the victim of bank fraud, fact that bank officer or employee may have known of fraudulent nature of transaction is not a defense to bank fraud).[1]

The 7th Circuit has more specifically addressed this issue in a mortgage fraud case where it upheld preclusion of the evidence.  *United States v. Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999).   In *Reynolds*, the defendant was charged with, inter alia, bank fraud based on misrepresenting his financial position in a mortgage loan application to Countrywide.  Similar to some of the false statements in the present case, the defendant in *Reynolds* understated his liabilities, misrepresented the source of the down payment, and misrepresented his wife's income. *Id*. at 524.

The 7th Circuit upheld the district court's ruling precluding evidence that the victim bank would have made the loan anyway "because it did not affect the materiality of [defendant's] statements; rather it only addressed the bank's reliance on those statements: 'An inquiry into ... whether the bank relied or didn't rely on the representations or the omissions or the exaggerations, et cetera, is not relevant.'"  *Id*. at 525.  The court emphasized that the focus of the inquiry must remain on the nature of the statements themselves, and not on the defendant's ability to actually influence the lender's decision:

> A statement is material if it would be capable of influencing the decision maker's decision; as we have said, there is no requirement that the statement must in fact influence the decision maker (that would be reliance).  Thus, the proper inquiry addresses not the defendant's ability to influence, but rather the nature of the statements made. Because [the defendant's] false statements could clearly influence a bank deciding

---

[1] This principle, too, finds consistent support among the circuits; *e.g., United States v. Gallant*, 537 F.3d 1202, 1224 (10th Cir. 2008); *United States v. Jiminez*, 513 F.3d 62, 75 (3rd Cir. 2008); *United States v. Hamaker*, 455 F.3d 1316, 1326 (11th Cir. 2006); *United States v. Waldroop*, 431 F.3d 736, 742 (10th Cir. 2005)

1   whether to approve a loan (even if they did not in fact influence the decision), [the
2   defendant's] argument on materiality must fail.

3   *Id*. at 525-26.[2]

4       Defendant Dino Sisneros's latest discovery request (Doc. #453) also demonstrates a
5   misunderstanding of the law in this area.  He alleges that there was no "materiality" in any false
6   statement submitted to the lenders because of the "business climate" at the time.  This is exactly
7   the type of statement or argument that should not be allowed in this trial.   For example, in
8   *United States v. Ovist* (D. Or. 2013), the defendant argued that the lenders so pervasively
9   disregarded their own underwriting standards that any misrepresentations on a loan application
10  "were irrelevant to the loan approval process[.]" *Id.* at 2.   The district court concluded that
11  evidence of any such lender misconduct "would bear only on the question whether the lenders
12  actually relied on the false statements rather than on the materiality of the statements."  *Id.  Ovist*
13  makes clear that any alleged lender misconduct does not inform whether a borrower's false
14  statements "could have influenced" the lender's decision.  As the court stated, "the lender's
15  alleged misconduct regarding their loan underwriting is irrelevant when determining whether
16  Defendant made the alleged false statements with the intent to influence the lenders' decisions."
17  *Id,  quoting*, *Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999).

18
19
20
21

22      [2] In *United States v. Maximov*, 2011 WL4915162 (D. Ariz. 2011), the court ruled that the
23  defendant "clearly [could not] point to loose lending practices of the victim financial institutions."  *Id.* at
    *4.  The court further stated that the "Defendant therefore cannot establish a defense to the crimes by
24  proving that the financial institutions did not rely or were not damaged."  *Id.* at *2.  However, the court
    interpreted *Neder*'s language that a material statement can influence "the decision making body to which
25  it was addressed" to allow the defendant to rebut materiality by arguing that the government's witnesses
    were "not accurately describing 'lending standards.'"  *5 (noting that it may not be easy to differentiate
26  such evidence from an improper defense).  *But see United States v. Gaudin*, 515 U.S. 506, 512 (1995)
    (materiality involved "inferences a reasonable [decision maker] would draw from a given set of facts and
27  the significance of those inferences to him") (internal quotations omitted); *United States v. Peterson*, 538
    F.3d 1064, 1072 (9th Cir. 2008) (the test for materiality is an objective test looking at the capabilities of
28  the statement itself); *United States v. Lankford*, 2013 WL 2295988, *2 (E.D. Cal. 2013) (stating "[t]he
    effect of the false statement on the victim lenders is not material.")

**B.** **Evidence of the actions of the mortgage lenders carries with it a risk of unfair prejudice, confusing the issues and misleading the jury.**

Federal Rule of Evidence 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Allowing evidence of the behavior of lending institutions implicates these considerations.

The advisory note to FRE 403 defines unfair prejudice as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. The government's concern is that allowing an inquiry into the conduct of the mortgage lenders—rather than the conduct of the defendants—would be unfairly prejudicial because it will encourage the jury to render a decision based on considerations other than whether the defendants were guilty or not guilty. *See* Reynolds, 189 F.3d at 525 (evidence showing that bank would have made exceptions in lending policies for the defendant was properly excluded as "confusing and a waste of time"). Allowing an inquiry into the conduct of the mortgage lenders, arguments alleging sloppy lending practices or a "blame the banks" defense would serve only to create the impression that the mortgage lenders were dishonest and deserved to be defrauded. This danger is especially acute given the animus that many people feel toward mortgage lenders and their role in the financial crisis.

Similarly, the evidence to be excluded also runs afoul of other enumerated grounds. Professor Wigmore defines the phrase "confusion of the issues" within the context of FRE 403 as:

> [t]he notion here is that, in attempting to dispute or explain away the evidence thus offered, new issues will arise as to the occurrence of the instances and the similarity of conditions, new witnesses will be needed whose cross-examination and impeachment will lead to further issues; and thus that the trial will be unduly prolonged, and the multiplicity of minor issues will be such that the jury will lose sight of the main issue, and the whole evidence will be only a mass of confused data from which it will be difficult to extract the kernel of controversy.

2 Wigmore, Evidence, 3d ed. 1940, § 443, p. 428.

As noted above, allowing any inquiry into the conduct of the mortgage lenders - rather than the conduct of the defendants - would necessitate a dramatic untangling when the jury is instructed.  Specifically, it would tend to confuse the jury on whose state of mind is relevant and material to the instant offense and whether actual reliance is a defense. *See e.g. United States v. Callipari*, 368 F.3d 22, 36–37 (1st Cir.2004) (upholding district court's decision to limit defendant's line of questioning during cross-examination based "on the well-founded concern that suggestions of 'blaming the victim' might turn into a 'fishing expedition' that would confuse the issues for the jury and unfairly prejudice the government's case.").

**C.**   <u>**Conclusion**</u>

For the foregoing reasons, the United States urges this Court to address this issue pre-trial and to preclude this type of evidence at trial - whether in the form of affirmative evidence, cross-examination of the United States' witnesses, or otherwise by inference or argument.

RESPECTFULLY submitted this 3rd day of January, 2014.

JOHN S. LEONARDO
United States Attorney
District of Arizona


*/s/ Jonathan B. Granoff*
JONATHAN B. GRANOFF
Assistant U.S. Attorney

Copy of the foregoing served
electronically or by other means,
this 3rd day of January, 2014 to:

Christian J. Kimminau, Esq.
Jeffrey D. Bartolino, Esq.
Thomas L. Fink, Esq.
Roberto C. Montiel, Esq.
Attorneys for defendants