Thomas L. Fink, Esq.
LAW OFFICE OF THOMAS L. FINK
825 N. Grand Avenue, Suite #200
Nogales, Arizona 85621
(520) 281-1338
(520) 287-5201 (FAX)
State Bar No: 012705
Attorney for Defendant Quiroz

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. CR-11-0794-TUC-RCC (CRP) |
| | ) | |
| Plaintiff, | ) | DEFENDANT QUIROZ'S MOTION IN |
| v. | ) | LIMINE CHALLENGING |
| | ) | GOVERNMENT'S USE OF F.R.E. 902(11) |
| MICHAEL QUIROZ, et al., | ) | CERTIFICATIONS |
| | ) | |
| Defendants. | ) | |

    Defendant, MICHAEL QUIROZ previously moved, pursuant to Rule 902(11) of the Federal Rules of Evidence, for an order requiring the government to disclose in advance of trial any certifications to be offered at trial as a basis for admission of records of regularly conducted activity under Rule 803(6) of the same rules.

    The government subsequently disclosed fifty-eight (58) witnesses who have provided certifications for business records (Document docket #s 454 and 490).[1]

    Rule 902 (11) of the Federal Rules of Evidence provides that a party may offer the foundational testimony for the hearsay exception through certifications by a custodian or by another qualified person. Rule 902(11) further provides that "Before the trial or hearing, the

---

[1] The government also intends to offer the foundation for other similar records through live trial testimony, without certifications, for similar groupings of records. The same analysis set forth below will apply to those witnesses' ability to lay a proper foundation. The only issue before the court at this time, however, is the government's proposal to use the Rule 902 certifications.

1

proponent must give an adverse party reasonable written notice of the intent to offer the record -- and must make the record and certification available for inspection -- so that the party has a fair opportunity to challenge them." Pursuant to Rule 902(11), the defendant formally moves to challenge the certifications.

The defendant challenges those certifications the government offers wherein the documents subject to the certification are records from "other sources." [2] That is, the defendant objects to those certifications for documents that are now in the possession of the certifying entity, but are records which "other sources" created. Specifically, the defendant challenges certifications for loan files and other financial records of which the certifying entity has custody, but which were produced by employees of other business entities.

The defendant's challenge to the certifications is that the subject records are hearsay, and that the certifying witness is not qualified to lay the foundation to establish that the records should be admitted as an exception to the hearsay rule, under Federal Rule of Evidence 803(6). Unless a qualified witness can lay that foundation, the records remain hearsay, and cannot be admitted.

For example, the certification #13 listed in the government's notice (docket # 454) is by Debra S. Percak, of J.P. Morgan Chase ("Chase".) The certification is offered to support the admission of 5,908 pages of discovery (bates pages #s 55108-61016). Chase employees produced few, if any, of those records. Instead, it appears that Chase, by default, simply has become the repository for the cache of documents.

The documents that comprise certification #13 include a wide variety of records produced by numerous different business entities in connection with the loan application, underwriting,

---

[2] The defendant does not challenge those records that derive exclusively from the entity represented by the certifying witness, such as a Wells Fargo Bank employee certifying bank statements of customers of the bank.

2

approval and funding processes for a number of different properties. In addition, many of the entities that produced those records are now defunct.

**Legal Analysis**

The subject records, if offered to prove the truth of the matters asserted, are inadmissible hearsay under Federal Rules of Evidence 801 and 802. The records, however, may be admitted as exceptions from the rule, with qualified foundation under Rule 803(6).

Rule 803(6) requires foundational proof that: **(A)** the record was made at or near the time by – or from information transmitted by – someone with knowledge; **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; and **(C)** making the record was a regular practice of that entity. Further, subsection **(D)** requires that, "all these conditions are shown by the testimony of the custodian or another qualified witness or by certification that complies with Rule 902(11) …" Finally, subsection **(E)** provides that "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness."

Defendant's challenge is that the certifying witnesses are not qualified to lay this foundation. Defendant further asserts that the records lack trustworthiness, and are subject to exclusion under subsection **(E)**.

In *National Relations Board v. First Termite, 646 F.2d 424 (9th Cir. 1981,* the NLRB sought enforcement of its order requiring First Termite (Termite) to cease and desist from certain alleged unfair labor practices. On appeal, Termite challenged the enforcement order on various grounds, including the admission of certain evidence against it. The subject item of evidence was a record that was used to establish an interstate commerce nexus.

3

The challenged item of evidence used to establish an interstate nexus was a freight bill. Termite had purchased a substantial amount of lumber from Economy Lumber. The freight bill showed that the product Economy Lumber had purchased and re-sold to Termite had come from another state. The freight bill was prepared by Southern Pacific Railroad.

A representative of Southern Pacific, however, was not called to lay foundation for the record. Instead, the NLRB had called an Economy Lumber bookkeeper as a witness. The Economy Lumber witness testified that she had received the freight bill, and that she had paid it. Termite objected to the document's admission as hearsay. The judge admitted the freight bill under the Rule 803(6) exception. *Id.*

Termite challenged the admission of the document because the authenticating witness was an employee of Economy, and not of Southern Pacific, the entity that prepared the challenged record. Termite argued that the witness had no knowledge of the circumstances under which the record was prepared. Termite also claimed that Rule 803(6) was not satisfied unless the witness had knowledge of both the making and keeping of the records sought to be introduced. Moreover, Termite contended that the witness must be able to testify that the record was made and kept in the ordinary course of the business' activity. Termite contended that Economy's bookkeeper did not satisfy the 'custodian of records or other qualified witness criterion of 803(6). *Termite, supra at 426*.

The court agreed with Termite, and denied the application seeking enforcement of the order. The court stated:

> The provision in the rule that requires that the record be supported by 'the testimony of the custodian or other qualified witness' insures the presence of some individual at trial who can testify to the methods of keeping the information. If the witness is not knowledgeable as to the manner in which the records are made and kept, he or she cannot be subjected to meaningful cross-examination. Without cross-examination on the keeping of the records, the trier of fact would

4

have no rational basis on which to evaluate the accuracy of the record, and therefore the trustworthiness of the evidence. Thus, the "testimony of the custodian or other qualified witness who can explain the record-keeping of his organization is ordinarily essential." *Id, at 427*, quoting J. Weinstein & M. Berger, *Weinstein's Evidence.*

The court ruled that the Economy bookkeeper "had no knowledge of how Southern Pacific's records were made or maintained," and, "It is clear . . . that the witness from Economy had no knowledge as to how the records were prepared nor any knowledge as to the manner in which factual information was placed in the records kept by Southern Pacific. Moreover, the record indicates no reason for the witness to be interested in the accuracy of the records as far as they refer to the place of origin of the lumber." *Id., at 428.* The court further noted that the Economy witness "was unable to demonstrate any familiarity with the procedures used by Southern Pacific in making the records, had not checked the records for accuracy, and did not rely on the information in the records as to the lumber's place of origin." *Id., at 428-29I.* The court thus held that the Economy witness was not qualified to lay the requisite foundation for the admission of the record. The court held the document inadmissible hearsay, and denied enforcement of the order.

The same principles the court set forth in *Termite* apply here. The certifying witnesses have no knowledge of how the records were made or maintained by the source entities. They have no knowledge as to how the records were prepared, nor any knowledge as to the manner in which factual information was placed in the records by those entities. Moreover, the record indicates no reason for the witnesses to have been interested in the accuracy of the records as far as the specific information in them that the government seeks to use. They will be unable to say that they had checked the records for accuracy. They will be unable to say that they relied on the information in the records during the course of their business activities.

5

Further, unlike in *Termite* which involved the admission of a single record, the government is offering the certifying witnesses in this case to qualify (a) a whole group of records, and (b) certifying that the group of records is a full and complete set.  This raises additional problems for the admission of the records.  The full loan application, approval and funding processes are factually significant in this case. During that process, a number of documents are passed back and forth among the parties involved.  Whether a group of documents is, in fact, the complete loan file is critical to the foundation for its admission.   It is problematic to believe that the witnesses will be qualified to testify that the group of records is a complete and accurate set of documents of that process.

Additionally, the group of records includes individual records, such as loan applications, that the government will offer as the applications used to petition for the loans at issue in this case. The certifying witnesses will be unable to testify that the applications contained in the set were the actual applications submitted for that purpose.  For all of these reasons, the holding in *Termite* precludes the introduction of the records through certification, to which the defendant objects in this motion.

The government will rely on *United States v. Childs, 5 F.3d 1328 (9th Cir. 1993)*. The facts of *Childs*, however, are distinct from the instant case.

In *Childs*, the appellant appealed his conviction on possession of stolen vehicle charges. Among the challenges on appeal was the court's admission of a number of documents as business records under 803(6).

The first challenged record in *Childs* was an application for Alberta, Canada license plates under an assumed name.  It was admitted as a business record of the Alberta Division of Motor Vehicles (DMV).  The appellant argued that the record was improperly admitted as a

6

business record of the Alberta Motor Division, because it was prepared by a private auto club that was contracted by the Alberta DMV to issue licenses.

The court ruled that there was no error in the document's admission. The court noted that the private auto club was hooked directly into the DMV's computer system, and could perform transactions on-line. The private club was following DMV's procedures for issuing licenses, and was performing the transactions directly on the DMV's computer system. Thus, for purposes of issuing licenses, the private club and DMV were essentially one entity. Thus, admission of these records was appropriate. *Childs, 5 F.3d at 1332-33.* The government cannot make the same assertion with respect to the entities and records in this case. The entities that created the records and the witness from the certifying agency had no such relationship.

The defendant in *Childs* also objected to several other types of documentation kept by auto dealers in connection with the stolen cars, such as certificates of title, purchase orders and odometer statements. These documents had been introduced to show that the stolen automobiles were the same cars that the defendant had possessed in Canada. The documents were admitted as business records of the automobile dealers. The defendant argued that the documents were improperly admitted because, although they were kept by the automobile dealers in their business, the dealers did not make the documents.

The *Childs* court held the documents were properly admitted. The court stated that the auto dealership witnesses testified that the documents in question were kept in the regular course of business at *their* dealerships. They further testified that they relied on the documents' identification of individual cars in keeping track of *their* cars. *Childs, supra at 1334.* Thus, the witnesses were able to testify that their businesses actively used and relied upon the documents to conduct their business.

7

The *Childs* court distinguished *Termite* because in *Termite* the lumber company (Economy) "did not rely on the portion of the record at issue and 'had no interest in the accuracy of that portion of the record.' In contrast, the auto dealers in this case did rely on the records at issue and had substantial interest in their accuracy. The circumstances of this case support the conclusion that the records are trustworthy." *Id., quoting Termite, supra at 429.*[3]

The instant case is most like *Termite*, not *Childs*. The government in *Childs* produced witnesses who could testify that the records were actively used, and relied upon, in their own business dealings, that is, their dealerships. The dealership witnesses testified that although they did not make the purchase orders, odometer statements or certificates of title, they kept those records in the ordinary course of their businesses, and specifically relied upon their identification of individual cars in keeping track of their own vehicles, and had an interest in their accuracy in order to function as an automobile dealership.

In contrast, in the instant case, the witnesses are no more than custodians of records that happen to have been passed into their custody. The original sources of the records mostly are no longer in existence, and the current custodians are no more than repositories of files and records that have passed into their custody. They have never used the records in their business, or actively relied upon them for their business purposes. Most importantly, the certifying entities never relied upon the records for the purpose for which the government seeks to use them.[4]

---

[3] The defendant in *Childs* also objected to the records on the basis that the witnesses laying the foundation no longer were current employees of the business. Defendant Quiroz does not raise this objection.

[4] For example, where the government offers a loan application made to a lender that is contained within such a grouping, it intends to use the document to prove that a defendant applied for such a loan in connection with a certain property. If the certifying entity was not the one that made the loan, but merely inherited the file from some other entity, the certifying entity would never have relied upon the information in the loan application for the making of the loan.

The witnesses cannot testify as to the procedure used to create them; nor can they testify as to any knowledge as to the manner in which factual information was placed in the records. The information in the records are from numerous diverse business entities, and concern mortgage loan transactions in which the certifying entity usually had no involvement, and that were completed long before the certifying entity came into possession of the records. The certifying entity thus did not use the records when they were created, and had no reason to check the records for accuracy while they were being put to use. Accordingly, the certifying witnesses are not qualified to lay the foundation under Rule 803(6), and will not be able to do so.

Finally, the original records in the instant case derive largely from entities which are no longer in existence, in large part because they were incompetent in their business activities, including their own recordkeeping. Thus, trustworthiness of the records is inherently suspect.

For all the above-stated reasons, the court should preclude the government from using the proposed Rule 902(11) certifications.

**RESPECTFULLY SUBMITTED** this 3rd day of February 2014.

LAW OFFICE OF THOMAS L. FINK

 *s/ Thomas L. Fink*
Thomas L. Fink, Esq.
Attorney for Defendant Quiroz

Original of the foregoing mailed/delivered
this 3rd day of February, 2014 to:

**Clerk of the United States District Court**

Copies of the foregoing mailed/delivered to:

**Honorable Raner C. Collins**
United States District Court Judge

**Jonathan Granoff, Esq.**
Assistant United States Attorney